The next case for argument, the branch of Citibank, N.A. v. De Nevares Good morning, Judge LaValle, Judge Lee, Judge Shin. My name is Gary Tracton of the firm of Kudman Tracton Allo-Posner. I represent the appellant Alejandro De Nevares. There are many issues, as I think you've seen in this appeal, so I would welcome if you want to direct me to any particular one because there's a limited amount of time and many issues. But until you do, I'll just stop at my outline. Well, I'll direct you to one, I guess, sort of big picture issue is, is this case, is what's at issue in this case an employment dispute covered by the arbitration agreement or is it more probably thought of as enforcement of a judgment that comes, a judgment that sort of arbitral disputes and an enforcement of a judgment in how we look at this case? Well, I, that's a good question. I haven't made up my mind, frankly, on that. It's, it grows out of a litigation that was a dispute about an employment dispute and I think usually you would continue in that proceeding, you would consider it still an employment dispute. I think my adversary has also sort of taken different positions on this. He has said that under Argentine law, this would be enforced because it's, the arbitration would be enforced because it's not an, it's not an employment dispute. But then on the other hand, it's clear to me that the arbitration agreement is limited to employment disputes and not even all employment disputes. It's, it's Mr. DeVaris' complaints about, about Citibank or I guess, I guess Citibank because that's who the defendant was in the case, Citibank's conduct. What is the relief being sought in the arbitration? It appears to be a permanent, a declaration that, that Mr. DeVaris cannot execute against assets that belong to the branch, whatever that means. It's not clear what that means and enjoining Mr. DeVaris, permanently enjoining him from doing so. So it sounds like, you know, back to Judge Lee's question, this is about the enforcement of a judgment, whether he can enforce the judgment. That's what the arbitration is about? It's, it's whether he can, well, certainly he can enforce the judgment. The question is whether he can enforce the judgment against the, the judgment that he has against Citibank. Well, doesn't it also cover the, cover the entire subject of his, of his suit from, from which he obtained a judgment? Well, that... Citibank is saying that, that that is required to be arbitrated, is that right? Well, if, if that dispute about his, his employment has in fact been litigated for ten years, well, we don't, I think that's the whole sort of the, the game that's being played here. Citibank N.A., which is the party to that employment dispute, and that was the defendant in the case, is not, is not here. They've been litigating for, for, for, I don't know, it's 12 years, I think. Twelve years. Twelve years. In Argentina. In Argentina. The city, I, I gather under Argentinian law that the employment disputes are not subject to arbitration. Is that the issue? Yeah, that, that's, that's, that's what our expert reported and gave, gave support for. The parties don't really address it. I was, I was interested in the notion of comedy, international comedy. You know, you have this foreign judgment, and it seems that the litigation that's been, that was commenced here and the arbitration are interfering with that judgment. Why aren't we, why shouldn't we give deference to that judgment? I, I agree completely, and I do believe that we did argue that below. I don't think we have it in our appellate brief. I don't think it's in our brief. Our, I think our trial court brief, I think we did. Judge Morrell mentions it in passing and, and, and talks about paramedics, China trade, a federal court may enjoin a party before, before it from pursuing litigation in a foreign forum. Does that concept apply when the, the party's been litigating for 12 years in the foreign forum and now wants an injunction? I, I don't know if there are cases on that. Right, well, Citibank's not, Citibank N.A. supposedly is not the one seeking the judgment. That, that's the whole, that's the crux of this case is who is this petitioner? Who, you know, it's, it identifies itself. I mean, it's not a proper name. It identifies itself with a small b, the branch, established under the law of Argentina with a small e. It's, it's, it's frankly quite conclusory. And, you know, the, Dr. Rivera is, is, explains in quite detail. If I may, I know I asked you to direct me, but if I could sort of pick it up myself a little bit here, because time is running. I think really to, to, to focus a lot of the, the meat of Dr. Rivera's report, his declaration is in some of the footnotes. So I want to highlight that a little. First, the statutory section, which their in-house counsel cited, but didn't provide the court with a copy of, Mr., Dr. Rivera does. And it says that section 118, that's the site of that, of the, of the general corporation law, regulates the basic norms applicable to a foreign company willing to do business in Argentina and distinguishes those rules for the companies that conduct business on an isolated basis that do business on a regular thing. Now he cites really a very important case, the equity trust case, because that was specific. That's an Argentine case by the National Commercial Appellate Court. Very important case because it expressly addressed Citibank N.A. and its branch. And it said that they are one in the same. They're not different. And I could go through the details of that case if you want, or, or, you know, I could, I could move on. But the way Judge Morera distinguished that case was to say, and remember, we're talking about jurisdiction here. He said, well, that was a case about a promissory note. We're talking about an arbitration agreement where there's a policy in favor of arbitration. But the policy in favor of arbitration does not give, does not change the bar for jurisdiction. You still have to be a legal entity. And, and, you know, if the Morgan case said you can't have special procedural rules, you know, to, to, that are because of the FAA, that you have to treat as a contract as a contract, promissory note and arbitration, they're both, they're both contracts. And, and you can't, you know, so that's, that just doesn't really make sense. Most, most notably in footnote six of, of, may I just, I'm sorry. Go ahead, I'll ask it after you finish. Okay. Footnote six, quoting the Supreme Court of Justice of Argentina in the Bank of Tokyo case, also described to 118, it provides that the company organized abroad, right, and that's Citibank N.A., it's a foreign bank there, is ruled insofar as its existence and format by the laws of the place of incorporation, National Bank here in the United States. And the branch, and the branch does not have its own personality, thus it is the same company organized abroad that carries out in a decentralized manner a certain activity in our country. It is the same company organized abroad and its net worth is not distinct from the parents. And the whole basis of, of this case is, is a claim that the branch is not merely a branch. Now, I'm, I'm sorry, I cut off a question. Well, I, I'm, my question expresses confusion about the standard for appellate review on a, of a question of foreign law. Because there is lots of authority that states questions of foreign law are reviewed de novo as issues of law. But at the same time, the way foreign law is established in a court is by the testimony of witnesses, expert witnesses who testify on foreign law. And if the, if the, the content of foreign law is established by the testimony of witnesses, the court is more or less bound by, well, I don't know whether it is, but the, the, the what determines generally the court's determination of foreign law is not for the court to go and do research into, into foreign law the way the court would do on domestic law. It's to see what the witnesses have said and to make the determination that way. That's what, that's what this district court did, made a determination of foreign law based on the testimony of expert witnesses who appeared before him. How do we, how do we review that? Do we review that as a question of fact where, where, where there would have to be clear error? Because if a, if an expert witness comes before the court and gives deficient testimony in that it fails to set forth some important, some important sources of authority on foreign law, the district, the district court is not going to know that. And there's no way for the district court to know that, that the testimony before him is deficient. So is it reviewed, do we review the district court's ruling on the content of Argentine law as a de novo matter? Or do we determine whether there was clear error based on what was set forth in the testimony? I, I think, I think actually both are. Because on, on the, the, the imbalance of, of authority and citation and everything, it's just, it's, it's out of whack. On one hand you have an in-house council making a conclusory statement, doesn't even, I don't think gets to the point of saying that they're really separate entities. He says they have the right to sue and be sued and without any citation whatsoever for that proposition, a conclusory statement. That's on one side of the balance. And even after Dr. Rivera puts in a very thorough report, quotes from appellate decisions, goes in detail, I'm not positive of this, but I, I seem to recall that we offered Judge Morero, if you wanted to see translations of all the decisions that, that, that Dr., that Dr. Rivera cited. They don't even come back to, to, to, to question that report except to say, oh, that's just very conclusory. That's, that's all they did. No, no counter-authority, nothing like that. So I think that, yeah, you, you can only work with the record you have. I mean, so, so I think from the record it's very clear where the law, Argentine law falls. Now the other thing is, I really, although, although- You say that, you say that, that, that what should be determined in is that Citibank's expert had no, cited no Argentine authority to support the propositions. None whatsoever. He cited, he cited the same statute, just cited it, which Dr. Rivera actually attached to it and explained it, right? And even then, Judge Morero, even in, in a very critical way, just got it wrong. I mean, what he, what he described paragraph eight of the Pertin statement is saying that Citibank Argentina, the branch, also provides notice that it cannot be held liable for the legal obligations of Citibank. That's exactly opposite. So Judge Morero didn't even, when he was looking at the factors, he got one factor wrong. What it is, is that, that they provide notice that Citibank can't be held liable for the, for the, for the branch's liabilities. And there's a good reason for that, because this is a regulatory scheme. And under the regulatory scheme, Citibank NA, getting a license to operate through a branch, it gets that license because they agree that that branch is going to have its own capital requirements and reporting requirements. Doesn't make, remember, the branch was never incorporated anywhere. Nobody says it was. It's registered. It's not a person. It doesn't have legal existence. And our core argument here, because it's a threshold question, is it doesn't have, that the district court never had jurisdiction over this case in the first place. Any other questions? All right. Thank you. You've got some rebuttal. Thank you very much. Good morning, Your Honors. May it please the Court. I'd like to address the questions the bench raised in the first instance. Judge Lee, your question was about the scope of the arbitration agreement. And this is a classically broad arbitration clause. The clause itself appears at page 21 of the joint appendix. Can I just stop you for a second? I'm sorry. This seems very different, because if in fact you are not challenging the dispute, you're not trying to overturn that, if what this is about is actually just the enforcement of a judgment, that seems quite different from what the arbitration agreement, sort of the substantive disputes that the arbitration agreement arguably covers, versus this dispute has been litigated, there's a judgment, what is at issue here? What you're challenging is just, or I think is just the enforcement of the judgment, not the litigation of the underlying dispute. Is that not correct? That's exactly right, Your Honor. But the fact is these are two different entities, and this is an entity that was not involved in the arbitration, could have been involved in the arbitration, and in fact when this case began in Argentina, I guess 14 years ago, Mr. De Navares attempted to sue Citibank N.A. by serving Citibank Argentina. So it was not involved in the arbitration? You mean it was not involved in the suit? I apologize, Your Honor. I misspoke. Citibank N.A. is not involved in the arbitration. Citibank Argentina was not involved in the Argentinian lawsuit. But is this, could you speak then to, and sorry if I'm taking you off your track too much, but that initial question of them being separate entities and that the branch has legal existence. I am troubled by the conclusion that was reached by the district judge with regard to whether or not under Argentine law they're separate entities because the experts, to my mind, their affidavits really are quite distinct, and your expert does not in fact cite to law. And the other side's expert does. With respect, Your Honor, I don't think this is decided by sort of weighing on a scale the volume of cases cited or the length of an affidavit. This is, I think, a mixed question of law and fact because we don't contend that a bank and its branch are separate for all purposes, and we couldn't. The easiest example would be in determining diversity jurisdiction. It's the citizenship of the bank and not where the branch would be located. On the other hand, it's clear that under either New York or Argentine law, in some instances they are distinct. Right, but Argentine law, are you disputing that that's what applies to determine this question? Well, that's what the judge held, and we believe that's correct because that's where the branch is. Okay, so the fact that New York law might hold something different isn't really relevant. I don't think it's different, Your Honor. I think this is in fact a false conflict because it's a mixed question of law and fact because it's not true that they are always separate. It's not true that they are always together. The example Judge Marrero gave under New York law, one of many, of the separate entity rule where there's a clear line drawn by New York between them, and that was affirmed under strong terms by the New York Court of Appeals in the Motorola case. Right, but again, you're describing, you have said that you agree that Argentine, or maybe you don't agree, I'm sorry. No, we, I'm sorry, Your Honor. The district court held that Argentine law applies. You're, I don't know if you're saying you're disputing that now or? No, Your Honor, we believe that was correct. I was suggesting that the new argument that's now being made on appeal about New York law is in effect a false conflict because New York law, and we cite an article that goes through this somewhat exhaustively from the Harvard corporate governance seminar that's been publicly available. It's cited and quoted in our brief that says branches have a hybrid structure. Sometimes they're treated as separate entities, sometimes not, depending on the context. And Argentine law is the same because the opinion from Dr. Rivera that supposedly outweighs what Mr. Pertinney said actually says, and this appears at page 280 of the joint appendix, that he says that bank branches have a certain judicial, juridical autonomy. They can sue and be sued at least under some circumstances. And so it's a question of deciding what circumstances are present. How are they separate? And I look at all the different factors. Judging by the test that Dr. Rivera sets out in his supposedly weighty opinion and his conclusion about certain juridical autonomy, a city is separately licensed and regulated, just as a branch of a foreign bank would be regulated here by the Fed or the Comptroller. It is also separately registered and regulated by the securities authorities in Argentina. Right, but he comes down on, he lists these circumstances where there can be distinctions, but he comes down on the side of, but in this instance they are not separate entities. And he does, for your apparent, I don't know, I don't want to say disparagement of his affidavit, he does cite law. Your expert does not. He does, Your Honor. And doesn't he cite a case specifically addressing this, in perhaps a slightly different context, these particular city bank and the branch as not being separate entities? I think with respect, Your Honor, it's an entirely different context. And it is a mixed question of law and fact. And the way his declaration is structured is he describes Argentine law. He does cite cases at length. It has all the apparatus of an expert opinion on foreign law. And then he simply says, and so we win, they lose. And that's the part that's purely conclusory. He doesn't explain how the cases he cites. Well, what's the part, let me ask you then the flip side. What is in your expert's affidavit that is more compelling than that? Because he describes the particular factors that make the bank a separate entity relevant to these purposes. Perhaps the most striking, as a matter of Argentine law, and this is undisputed, city bank N.A. is not responsible for the debts of city bank Argentina. And that is undisputed on this record, Your Honor. And if they were one entity, if the branch had no existence, that couldn't possibly be the case. Well, I don't know that I agree with that. It's clear that there are circumstances where even for two entities that have, you know, they're considered a single entity, one does not have legal existence without the other. There are certainly circumstances where they can act independently or they might have different requirements in terms of payment or what have you. And I don't think the mere fact that, you know, for instance, the fact that the branch has capacity to sue does not mean that it's a separate, that it has separate legal existence from city bank. But the fact that it has capacity to sue, Your Honor, means this is not a jurisdictional issue. It's a question of capacity under Rule 17b. And that is a question here for the arbitrators because there's been a full delegation. This is as broad an arbitration. Capacity to sue is for the arbitrators, but legal existence goes to jurisdiction, doesn't it? And that's for us to decide, isn't it? I don't believe that's necessarily right. If the business didn't exist, if this was a fictitious entity, it would clearly go to jurisdiction. But if it goes to- Could I ask a somewhat different question? Assuming there are separate entities, you're arguing there's separate entities. A moment ago you said Citibank Argentina was actually not part of the Argentina case. What is the basis then for getting relief here to enjoin Mr. De Navarro from pursuing his remedies in Argentina? If you're saying the petitioner in this case has nothing to do with what happened in Argentina. But its assets are now at risk because Mr. De Navarro, for reasons that I don't fully understand, is pursuing his claim, his judgment against Citibank N.A., against the assets of Citibank Argentina in Argentina. And that goes directly- With the permission of the Argentina court, apparently. The Argentina court has held that they are one entity. But the point, Your Honor, is our point, is that having agreed to a broad arbitration clause, it's not up to the Argentinian courts to decide that. And that, I mean, a line of cases going all the way back to China trade, allows this court to halt foreign litigation being brought in violation or interfering with an arbitration- In a circumstance where there's been litigation for 12 years in the foreign court? I suppose, I mean, why didn't, why wasn't Suit brought 12 years ago to enjoin De Navarro from pursuing the litigation? Well, Your Honor, he sued only Citibank N.A., and as I said just a little while ago, he attempted to serve Citibank N.A. by serving Citibank Argentina, and an Argentine court quashed service there. And he could have joined Citibank Argentina, and he didn't, to his Argentine litigation. And the pace of litigation in Argentina, which seems remarkably slow, Your Honor, was that this case was brought in 2009, having to do with a discharge in New York in 2007. And I should point out, Your Honor, that- Can I just ask, why wasn't, well, this may not be something that's in the record that you can address, but the thing that concerns me is that this motion to compel arbitration was not made sooner. Because the threat to Citibank Argentina's assets didn't emerge until very shortly before the application to enjoin the collection efforts in Argentina and to compel arbitration was brought. There was nothing, up to that point, he was proceeding only against Citibank. And I think, I realize I'm switching gears slightly here, but on the comedy point, New York has a well-established statutory mechanism, applicable in state and federal court, for enforcing foreign judgments. It's Article 53 of the CPLR, the Uniform Foreign Country Money Judgments Act. And Mr. De Navares has always had that option, to take his judgment from Argentina and domesticate or attempt to domesticate it in New York, pursuant to that statute. He's never done it. And I don't know why he hasn't done that, but I think this is a case for Occam's razor. The simplest explanation is probably the correct one. He knows that judgment couldn't withstand scrutiny in an American court. Because Citibank N.A. is right here on Park Avenue. They're one of the most solvent entities in the world. If he really wanted to collect from the party he sued, and not the party he attempted to serve the party he sued through, then that's the remedy he would be pursuing. But I think also, Your Honor, if you go back to the origins of this case, what happened here is Mr. De Navares worked at Citibank in Argentina. He was offered a position at Citibank N.A. in New York, and in order to take that, he signed a formal resignation letter. And that letter, it appears at page 101 of the appendix, and it says, I furthermore understand and accept that Citibank N.A. New York branch is a different employer. And consequently, I will have no right to claim from Citibank N.A. branch, established in the Republic of Argentina, any item or difference or indemnity that may result as a consequence of or in relation to my labor relationship with Citibank N.A. New York branch. I gather these arguments were made in Argentina as well? I believe so, Your Honor. Yeah, and apparently rejected. But our point, Your Honor— The claim in Argentina is that he should have been reinstated in Argentina? The claim in Argentina, Your Honor, is that Argentinian labor law applied to Mr. De Navares' discharge in New York, and that he— Was he seeking reinstatement to a position in Argentina on the basis that they really were the same entity? I don't know the answer to that, Your Honor. He brought a claim for damages either because they didn't reemploy him or because he had been discharged in New York. And those damages now exceed $12 million with interest running from the date he brought his claim, including about $1.7 million in attorney's fees and, remarkably enough, about half a million dollars for a court-appointed translator. So—and then he confirmed that separateness in a telegram, which is required, as I understand it, under Argentinian law. And so for Citibank N.A. to—well, for Citibank Argentina to assume it had been sued when there was this failed effort at service, when Mr. De Navares, in order to take this much more lucrative position in New York, had confirmed the separateness of the two entities, that he had given a release to Citibank N.A. I'm sorry. I apologize, Your Honor. He had given a release to Citibank Argentina. The fact that in 2019 he suddenly switched gears, announced that the documents he had signed had no effect and that he was now going to pursue his remedies on the judgment he had gotten against Citibank N.A., only against its Argentinian affiliate, I think that's the reason they didn't litigate. They didn't litigate up to that point and they didn't arbitrate up to that point because they didn't believe themselves to be at risk. This was a problem for Citibank N.A. And there is, as I say, a statutory mechanism that Mr. De Navares is free to avail himself of at any time. We've pointed this out repeatedly in our district court papers. And I think it's frankly inexplicable that he doesn't attempt to domesticate his judgment here. So I have confusion. Did the district court grant an injunction? Did the district court grant a stay or an injunction telling him he may not pursue his remedies in seeking to enforce the judgment against Citibank N.A. to enforce it against the branch? As I think, Your Honor, you're asking whether or not, well, what was the scope of the injunction? Yes. The injunction, the preliminary injunction that lasts the life of the arbitration, and that arbitration was stayed on Mr. De Navares' request. But that injunction prohibits Mr. De Navares from enforcing his judgment against Citibank N.A., against the assets of Citibank Argentina. So why is that not a subject under your concept of the case? Why is that not something that should be left to the arbitrators? Well, it will be. This is only a preliminary injunction, Your Honor, just like a China trade injunction. What it does is it bridges, it prevents the arbitration from becoming moot. And in the arbitration, we will ask. You're saying that that would be a question that's simply provisional. That's exactly right. And when you look at the terms of the injunction itself, Your Honor, which appears, well, it appears on the next to last page of Judge Morero's order granting the injunction. By its terms, the preliminary injunction exists only as long as the arbitration exists. Because in the arbitration, as Your Honor says, we will ask for a permanent injunction. But without that preliminary injunction, and it's very common, this is a... So your concept of the case is that for a number of years, the Navarro's has been proceeding in an Argentine litigation against Citibank N.A. But having obtained a judgment in that case, he is now attempting to expand that judgment by seeking to enforce the judgment against assets of the branch. And you say that his arbitration agreement bars him from proceeding judicially, otherwise than by arbitration, to do that. I think that's an accurate summary of our position, Your Honor. The arbitration clause is a classically broad clause, and arising out of a relating to clause, the exact words... Would the arbitration clause preclude enforcement against Citibank N.A.? No, and we've made it absolutely clear in the district court in here that Mr. de Navarro is free to pursue his judgment, the enforcement of his judgment against Citibank N.A. If he can find assets of Citibank N.A. in Argentina, he can proceed against them there. But he did sign an arbitration agreement, which on its face would prevent him from taking any actions arising out of his employment with Citibank N.A. That's correct, but Citibank N.A. has litigated with him, and there is a judgment. But Citibank Argentina has not litigated with him because he chose not to sue them. He had that opportunity. And so, Your Honor, I mean, Citibank N.A. has sufficient assets to pay this or any other judgment. He has assets in... Citibank N.A. has assets in Argentina as well. Not to my knowledge, Your Honor. Not to your knowledge. In fact, there was... That's the issue, then, because I think that's why they're proceeding against Citibank Argentina, and not Citibank N.A. if Citibank N.A. doesn't have assets down there. Well, he has claimed that it has assets there. He attempted to levy on an asset of Citibank Argentina, and that was the basis for the finding of contempt. But if he can find assets there that actually belong to Citibank N.A., and that may or may not be contested, he can proceed. But as I say, he's not restricted to proceeding in Argentina. Does Citibank N.A. have the power to close the branch in Argentina and take its assets into Citibank N.A.? That's a question of Argentine banking law, Your Honor. I would assume that there's some process for closing it down, but how they would have to satisfy creditors and the Central Bank of Argentina and whether... Assuming that they pay all the debts and that they pay all the debts, is there anything that stops Citibank from withdrawing assets from the branch in Argentina? I believe they can't simply withdraw those assets as a matter of Argentine law because of the reserve requirements, the separate Argentine reserve requirements. Assuming that they don't offend the reserve requirements, but it may take an amount of money out of the Argentine branch that wouldn't offend any reserve requirements and wouldn't impair any obligations? I suppose, Your Honor, they could make that business decision. They could make the same business decision with a subsidiary. Those are assets of Citibank N.A. No, I don't think the fact that they could have passed appropriate resolutions and just have them and somehow repatriate them, I don't think that shows that those are now their assets. The fact that they might be able to get them, any more than if this were separately incorporated, they could simply use their control over a subsidiary to cause the board of directors to meet and dissolve the company and pay a liquidating dividend back to Citibank N.A., that doesn't mean they would be their assets now and that they could be levied on. And in any event, if he wants to try that, this question hasn't come up in the course of this litigation, but I suppose that's an argument that should be made in the district court. If Mr. De Navares now wants to pursue that avenue of relief, he could easily ask Judge Marrero to construe the injunction that's been entered. Would this or would this not violate? Are these assets of Citibank N.A. or not? But that's, and I say with respect, Your Honor, that I think that's a hypothetical case. It doesn't say anything about whether or not there are those assets now. And if it turns out that my analysis of this is wrong, then he could pursue that if they were in fact assets of Citibank N.A., but right now the assets that he attempted to levy on were assets of Citibank and he's got this complicated explanation about how he did it to preserve some sort of litigation rights in Argentina, but he attempted to seize Citibank Argentina's assets. And if I could just very briefly address your question, Judge Lee, this is a classically broad arbitration clause. It covers not only the employment relationship, but anything related to, not just a rising asset, but anything related to the arbitration and it speaks in terms of tort in contract or otherwise. And so under an unbroken line of cases in this court, in the Supreme Court and everywhere else, the leading case here is Collins and Aikman. That clause has to be construed broadly. And more important, or equally important, under the delegation cases that most recently, the most recent example of which is the Henry Schein case in the Supreme Court, interpreting the scope of the arbitration agreement, the question of arbitrability, is itself a question for the arbitrators. And after all- Right, but it's, I mean, I guess my concern is when the, does the agreement, I understand they're interpreted broadly, but on the question of arbitrability, does it express, I think the language is a clear intent, to arbitrate enforcement? Because I guess the thing I'm wondering is if in this arbitration, what do you envision happening? Because I think you've said that you're not trying to undo the litigation, although maybe effectively you are, because if what's all, if the only thing in dispute is whether or not this judgment is going to be enforced, but it's not going to reach sort of the underlying, or is it going to reach what was in that- I don't think it will, Your Honor. If Mr. De Navares hadn't sought successfully to stay the arbitration, we'd know the answer to that question now. But I think this is simply, the question is the enforceability of the judgment against a different entity. Any more than if Mr. De Navares tried to seize your house, would that, and you happen to have an arbitration agreement with him, would that arise out of or relate to this Argentine litigation he's been pursuing? The answer is yes. And so it's a question of judgment enforcement, but against a different entity. Citibank N.A. is not, and is not planning to be- excuse me, Your Honor- is not planning to be a party to that arbitration. And as I say, Mr. De Navares is free to pursue his remedies against Citibank N.A. anywhere in the world. Here, or in Argentina, or in any other country. And it's something of a mystery to me as to why he hasn't done that, rather than, he's been litigating it up a storm in Argentina about this. There's an easy procedural pathway here for him to do that, and I would imagine the same is true in other countries, because the comedy doctrine, Judge Chin, has been adopted in statutory form in New York, and any number of other U.S. states, because it's a uniform act. It would be our burden to show that it's not enforceable in New York. And I think his reluctance to pursue that remedy tells us a lot about the quality of the judgment he has, but that's an issue for another day. The suit that he brought in Argentina against N.A., that suit was not permitted by the arbitration clause. That's correct, Your Honor. Under the arbitration clause. That's correct, Your Honor, but his claim, and I think there is some force to it, is that Citibank N.A. waived its right to arbitrate by litigation, and we don't contest the fact that under some circumstances. That's what I wanted to ask, is that you, by proceeding with that suit, without making efforts at least to say that that suit cannot be prosecuted, it must go by arbitration, then haven't you waived your rights under the arbitration clause? Citibank N.A. has arguably waived its rights under the arbitration clause, but not the separate entity, Citibank Argentina, which he acknowledged was separate, which an Argentine court at the outset of this litigation acknowledged was separate. And so their right, Citibank Argentina's right to arbitrate, has never been waived by litigation, precisely because they haven't litigated. And they didn't litigate, and they didn't invoke their right to arbitrate earlier, because he had signed a series of acknowledgements releasing Citibank Argentina and acknowledging their separate status. I see that I'm well over my time, Your Honor. Yes. If there are no further questions, I thank the court for its time and attention. All right. Thank you, Mr. Cecil. Thank you. Gilad here. I'm hoping you'll be a little generous with your time, but I'll try and stay within my time. You know, I think the notion that, you know, the question is, why aren't you suing here in New York to go after it? I think the real question is, since Mr. Stowe says that the right to arbitrate is in Argentina, this goes a little bit to the comedy argument, that why didn't they go? You have a judgment against Citibank NA. Why not file it here and try to enforce it? Well, the judgment is an Argentine judgment. Well, he could file a foreign judgment here in New York and then try to. They could have, but he had Argentine counsel, he had an Argentine judgment, he lives in Argentina, questions are a matter of Argentine law, and that's where they were comfortable. And he could have. You know, maybe in retrospect he should have. Maybe in retrospect he should have gone through the arbitration. But he looked at this lawsuit, we looked at this lawsuit and said, there's just no jurisdiction here because I don't care how many times you pound the table and say we're a separate entity, that doesn't make it so. And for constitutional Article 3 purposes, the fact that Mr. De Navarro may have said sometime, I recognize them as separate entities, that's not binding on this court, that's not even influencing on this court in terms of whether there was jurisdiction. And a decision on a service of process case that says, no, you're separate entities, the appellate court there said, no, you're one and the same. That decision on service means nothing. And more recently, and this is in the record, you may have noticed that under Argentine law, Mr. De Navarro's Argentine counsel has a separate right to enforce the judgment as far as his portion of it. All right? He never signed an arbitration agreement. So whoever this is, Citibank, NAA, or the branch, they keep on calling it Citibank Argentina, there's no such thing, it's the branch. He goes, he went after, he goes into, he sees that there's an account in the central bank under the name Citibank NA. And he goes to execute it. And Citibank- He's signing the release that acknowledged that the two entities were separate and different employers. And that he did not have recourse against Citibank Argentina. For damages relating to his employment with Citibank NA. Right. So the Argentine appellate court ruled that that was an artifice that wasn't binding on him. Okay? That's what they ruled. That's, you may disagree with that. I may disagree with that. But that's the ruling that was made in the case. That they are, that they are, that they're one and the same. But I want to get back to what happened in, if I may. He goes into Citibank NA account. Lawyers march in to court to try and stop this execution. It's the same judgment, just a different interest. They come in and they announce themselves, we are lawyers for Citibank NA based in the United States. And we are going to argue now that you can't touch that account because it belongs to the branch. Well, if the branch has the right to sue, if the branch is really a separate entity, why isn't it the branch that's marching in and saying, hey, that's our money? It's because it's one and the same. So how did the Argentine court resort that? They said, go ahead, you get that money. And that million and a half has already gone out to, which they claim is Citibank branch assets. Court has already ruled it's not Citibank assets. If you want to know what Argentine law is, let's see what Argentine courts are doing. And that went up to a Nepal court. That was that motion for, what do you call it, for clarification. And I think we haven't addressed, and it's really important, we haven't addressed the matter of the contempt. Let's take a look. First of all, it's de novo that we decide what the TRO means. But the TRO said that he was enjoined from enforcing or making any effort to enforce. Let's focus on the word enforce. Enforce implies something coercive. That means I'm asking for relief. That's what that means. He did not ask for relief. When he was a nominal party to that motion, which was a motion for clarification, his lawyer said, if you're not part of this proceeding, don't ask for relief. But if you're not part of it, you may be prejudiced later if it doesn't go well. So his lawyer decided he was going to put his name on there. If you look at the decision, it's in the record of that court. That court did not grant Mr. de Novaris any relief. It did grant relief, but it granted it to his lawyer for his interest in the case. That is not, that did not violate this TRO. And certainly, you could read the TRO. You're not going to read it. He can't, you know, Judge Moreno says, well, as I understand it. Well, it shouldn't be a question of who will understand it. It was ambiguous. Its scope was ambiguous. And Mr. de Novaris was prudent and careful and respectful of the court's judgment because even though the bank account was in the name Citibank N.A., he did not join in that application. Now, they say he can sue. We right now have, not we, maybe we, there's a, they found a building in Argentina titled in the name Citibank N.A. And they're fighting and they're saying that. Now, Judge Moreno did say the foregoing restraint does not include any effort to enforce the judgment against Citibank N.A. directly. He didn't say any Citibank N.A. outside of Argentina. What they want to do is take every asset that's in Argentina and say, no, no, it doesn't belong to Citibank N.A. But the branch is just a branch is just as a branch. It's an instrumentality. It's Citibank N.A. doing business in Argentina through a branch, through a regulatory system. It's just like if you have a law firm in multi-states, right? It's one law firm. Now, the various branches, people may, because of the local laws, state laws, may have a different regulatory system for how to regulate lawyers. But it doesn't turn them all into separate entities. Now, what Mr. Stills, he misquoted, or he made it sound like a quote. He said that Dr. Rivera said it has judicial autonomy, and then he said, and can sue and be sued. Dr. Rivera did not say that. That is not the language here. He inserted that language. What he said is has juridical autonomy given by the scope of the powers granted by the parent in favor of the legal representative. Specifically, the National Commercial Appellate Court has the opportunity to express the rule that Citibank N.A. and its Argentine branch is one single entity. It is not, just pound the table all you want, it's a branch. And it's the same in the United States, and it's the same here. The separate entity rule is a very, very narrow rule in the United States for garnishments. It has nothing to do with banks as creditors. As a matter of fact, the first department in 2015 referred to it as an arcane rule that the Court of Appeals of New York has said it solely relates to garnishment, which is not what this case is. And as we read from the Supreme Court of Argentina, Citibank as a foreign entity there, its existence, the branch's existence as part of a foreign entity is ruled by the law of where it's organized. The roots of the branch, the branch was created by a New York entity or a national association. That's what was created. That's what its roots. You don't go by where it happens to be exist. You go by as the fund liquidation case goes. It's where its legal roots are. Think about this. This is really, I think, sort of from 30,000 feet. Here's what Citibank is trying to tell us. I'm going to say Citibank because I don't think there's anything the branch is trying to tell us. It's not a corporation, but it's owned by Citibank. I think that's it. You're asking about the assets, you know, could they bring them home, right? We can't go after its ownership interest in the branch because there is no stock. There's no membership interest. There's nothing. We can't execute on the ownership interest. But they own it. They're saying that everything that they have, that they make available to the branch, somehow escapes the ability to execute completely. At least if you have a subsidiary, a corporation has a subsidiary, then you can execute against its stock. If it's an LLC, you can execute against membership interest. How do we execute against this wealth that Citibank MA has? It's mind-boggling that it's like a massive effort to just immunize assets. That's the whole basis of this. And I just want, Mr. Dinovirus has been very careful. He did not make any effort. He did not in any way take any course of action, even though we think he would have had the right to join that application. And by the way, the proceeding in which this happened was a proceeding started by Citibank MA. The council there did an execution, didn't start litigation, just ran execution against it, and Citibank MA marched in. They started the proceeding, and so it wasn't any proceeding commenced by my client. And $90,000, almost $90,000 for a three-page brief. That's what he was awarded. All right, thank you. All right, thank you to you both, and that concludes our calendar for today. And so I think we're ready to adjourn.